UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**RILEY RICHARDSON**                                      **CIVIL ACTION**

**VERSUS**                                                **NO: 08-1074**

**KERR-MCGEE OIL &**                                      **SECTION "C"(1)**
**GAS CORPORATION, ET AL.**

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed by Defendant Kerr McGee Oil & Gas Corporation ("Kerr McGee"). (Rec. Doc. 113). Also before the Court is a motion for summary judgment filed by Defendant Charles Holston, Inc. ("Charles Holston"). (Rec. Doc. 125). Plaintiff opposes both motions. (Rec. Doc. 131). Having considered the memoranda of counsel, the record, and the applicable law, both motions for summary judgment are GRANTED for the following reasons.

## I. BACKGROUND

This case arises from an accident, which allegedly occurred on February 20, 2006 when Plaintiff fell while working on the Nansen Spar, which was owned and operated by Defendant Kerr McGee at all times relevant to this suit. (Rec. Doc. 1 at 3). Plaintiff was working at the time for Charles Holston, an independent contractor hired by Kerr McGee to perform maintenance services for the Nansen Spar. (Rec. Doc. 113-1 at 2).

The Nansen Spar is a buoyant petroleum extraction platform located in the Gulf of Mexico 150 miles south of Houston, Texas. (Rec. Doc. 113-8 at 1). The Nansen Spar is moored to the sea floor through a series of cables and pilings that extend 230 feet into the sea floor. (Rec. Doc. 160-2 at 1). The Nansen Spar is also connected to a network of nine risers and two pipelines used to

extract and transport petroleum. (Rec. Doc. 113-8 at 1). Through tightening and slacking its connecting cables the Nansen Spar can be maneuvered within a 250 foot range in order to gain better access to the different wellheads it services. *Id*. The Nansen Spar has only been maneuvered in this manner on two occasions since 2001. (Rec. Doc. 160-2 at 2). Finally, the Nansen Spar is not expected to be moved from its present location for 17 years. (Rec. Doc. 113-8 at 1).

Through its present motion Kerr McGee argues that the Nansen Spar is not a "vessel" for purposes of the Jones Act, 46 U.S.C. § 30104, and therefore Plaintiff's Jones Act claims must be dismissed. (Rec. Doc. 113-1 at 4-7). Defendant Charles Holston also moves for summary judgment on the grounds that the Nansen Spar is not a "vessel." (Rec. Doc. 125-3 at 5-7). Furthermore, Kerr McGee argues that it is not liable for Plaintiff's injuries under Texas law, which it argues applies to this case under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331 *et seq*. (Rec. Doc. 113-1 at 8-12).

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247-48 (1986); *see also Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district

court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.,* 974 F.2d 646, 649 (5th Cir. 1992).

### *B. The Jones Act*

A cause of action will not arise under the Jones Act unless the plaintiff is a "seaman." *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 346 (5th Cir. 1999). To establish seaman status for Jones Act purposes, a plaintiff must establish that: (1) his duties contributed to the function of the vessel or to the accomplishment of its mission; and (2) that he had a connection to a vessel or an identifiable fleet of vessels in navigation that was substantial in terms of both its duration and nature. *Chandris v. Latsis*, 515 U.S. 347, 367-70 (1995); *Hufnagel v. Omega Service Ind., Inc.*, 182 F.3d 340, 346 (5th Cir. 1999).

Defendants argue that the Nansen Spar is not a "vessel" for purposes of the Jones Act and therefore Plaintiff's Jones Act claims should be dismissed. (Rec. Doc. 113-1 at 4-7; Rec. Doc. 125-3 at 5-7). The Fifth Circuit has clearly stated that spars are not vessels but are rather work-platforms. *Fields v. Pool Offshore, Inc.*, 182 F.3d 353, 358 (5th Cir. 1999). Specifically, the Fifth Circuit held that spars are not vessels because spars: 1) are designed to work a specific, fixed location for the foreseeable future, 2) are secured to the ocean floor with an "elaborate system that guarantees

movement will be a difficult and expensive undertaking," and 3) they have a "tightly-constrained range of motion" limiting them to 250 feet of incidental mobility, which is not inconsistent with work platform status. *Id.* at 358-59. Since the Nansen Spar exhibits all three of the above characteristics, if *Fields* is still good law, then this Court would be compelled to hold that the Nansen Spar is not a vessel.

Plaintiff argues that *Fields* has been overturned by *Stewart v. Dutra Construction Co*, 543 U.S. 481 (2005). (Rec. Doc. 131 at 3). In *Stewart* the Supreme Court held that a "vessel is any watercraft practically capable of maritime transportation, regardless of its primary purpose or state of transit at a particular moment." *Stewart*, 543 U.S. at 497. The issue before the Supreme Court in *Stewart* was whether a dredge in Boston Harbor was a vessel, despite the fact that it was not moving at the time of the plaintiff's injuries and could only propel itself by manipulating its anchors and various tow cables. *Id.* at 484-87. The Supreme Court found that the barge was a vessel because the barge "was not only capable of being used to transport equipment and workers over water - it *was* used to transport those things." *Id.* at 495.

In reaching its decision, the Supreme Court was careful to distinguish two cases, *Cope v. Vallette Dry-Dock Co.*, 119 U.S. 625 (1887) and *Evansville & Bowling Green Packet Co. v. Chero Cola Bottling Co.*, 271 U.S. 19 (1926). *Id* at 493. In *Cope* the Supreme Court held that a floating drydock was not a vessel because it was not practically capable of being used to transport people, freight, or cargo from place to place. *Id.* In *Evansville* the Supreme Court held that a wharfboat was not a vessel as it was secured by cables to the mainland and therefore not practically capable of being used for transportation. *Id.* The *Stewart* Court held that neither of these cases was inconsistent with its definition of vessels because "a watercraft is not capable of being used for maritime transportation in any meaningful sense if it has been permanently moored or otherwise rendered practically incapable of transportation or movement." *Id.* at 494.

4

While the Fifth Circuit has recognized that *Stewart* has "broadened the set of unconventional watercraft that must be deemed vessels," it has not specifically addressed whether *Stewart* has overturned *Fields*. *Holmes v. Atlantic Sounding Co.*, 437 F.3d 441, 448 (5th Cir. 2006). Having considered both *Stewart* and *Fields* this Court is convinced that *Fields* remains good law. As the Supreme Court noted in *Stewart*, "a watercraft is not capable of being used for maritime transportation in any meaningful sense if it has been permanently moored...." *Stewart*, 543 U.S. at 494. Here the Nansen Spar, like the spar in *Fields,* has been, in effect, permanently moored to the ocean floor, and therefore under *Stewart* it is not capable of maritime transport in any meaningful way. Plaintiff argues that the Nansen Spar is capable of transportation because it can move itself within a 250 foot range, just like the barge in *Stewart*. (Rec. Doc. 131 at 6). However, the ability to move 250 feet in the middle of the ocean can hardly be considered "transportation," nor does *Stewart* stand for the proposition that a structure becomes a vessel if it is capable of any movement. Rather *Stewart* recognized that even floating, and therefore moving, docks and boats are not vessels if they are permanently moored or secured by cables to the mainland. *Stewart*, 543 U.S. at 493. Consequently, since the Nansen Spar is permanently moored to the ocean floor, its incidental movement is insufficient to make the Spar a vessel and therefore Plaintiff's Jones Act claims must be dismissed.

### C. The Outer Continental Shelf Lands Act

In 1945 President Truman declared that the United States regarded the Outer Continental Shelf beneath the high seas but contiguous to the coast of the United States as appertaining to United States' territory. *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 355-66 (1969). In response to this expansion of United States territory, OCSLA was enacted in 1953 to expand federal jurisdiction to the limits of the continental shelf. *Id.* After Congress had expanded federal jurisdiction to cover

5

oil and gas platforms on the Continental Shelf, it was unclear what body of law would apply to these new platforms. *Rodrigue*, 395 U.S. at 355-66. Congress eventually decided that oil platforms would not be covered by maritime law, but by federal law. *Id.* at 366. However, Congress realized that federal law was inadequate to handle the variety of legal claims that would arise on these OCSLA sites, so the law of adjacent States was selected to supplement federal law. *Id.* at 362-366.

The Fifth Circuit interprets OCSLA as creating a three-part test to determine whether state law applies as a supplement to Federal law: (1) the controversy must arise on a situs covered by OCSLA; (2) Federal maritime law must not apply of its own force; and (3) the state law must not be inconsistent with Federal law. *Union Tex. Petroleum v PLT engineering, Inc.,* 895 F.2d 1043, 1047 (5th Cir. 1990). Here all of the parties stipulate to the fact that the Nansen Spar is an OCSLA situs and the Court agrees with the parties. (Rec. Doc. 180-82); *see also, Demette v. Falcon Drilling Co., Inc.*, 230 F.3d 492, 498 (5th Cir. 2002) (listing the factors that make an installation an OCSLA situs).

The parties disagree on whether Federal maritime law applies to Plaintiff's claims. In order for Federal maritime law to apply, Plaintiff's tort claims must (1) involve a maritime location and (2) be connected with maritime activity. *Texaco v. AmCLYDE Engineered Products Co., Inc.*, 448 F.3d 760, 771 (5th Cir. 2006). Plaintiff argues that maritime law applies to this case because he was injured while on board a vessel. (Rec. Doc. 181 at 2). However, as previously discussed, the Nansen Spar is not a vessel and therefore maritime law will not apply on that basis. Moreover, under OCSLA admiralty jurisdiction should not be extended to accidents on areas covered by OCSLA. *Texaco v. AmCLYDE Engineered Products Co., Inc.*, 448 F.3d 760, 773 (5th Cir. 2006). Finally,

"OCSLA's text and history require application of the Act to harm arising directly from the repair and maintenance of fixed platforms on the Shelf...." *Id.* In this case Plaintiff was injured while

performing maintenance work on a fixed platform on the Outer Continental Shelf, therefore maritime law does not apply to his claims. *C.f. Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 781 (5th Cir. 2009) (en banc) (contrasting a tort which occurs on navigable waters, where maritime law applies, with a tort on a stationary platform).

There are few cases that address the third part of the of the *PLT Engineering* test. Those cases that do discuss this section of the test do little more than state that under OCSLA state law is applied to the extent that it is not inconsistent with Federal law. *Rodrigue*, 395 U.S. at 358. In this case, if any state law is borrowed by Federal law it would be the law of Texas, as the Nansen Spar is adjacent to Texas. *See Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 481 (1981) ("Thus, a personal injury action involving events occurring on the Shelf is governed by federal law, the content of which is borrowed from the law of the adjacent State...."). Here no party has suggested that the applicable Texas laws are inconsistent with Federal law, nor can the Court find any such inconsistency. As a result, the Court finds that Texas state law applies to Plaintiff's claims.

Furthermore, section 1333(b) of OCSLA extends the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq*, to employees disabled or killed "as the result of operations conducted on the outer Continental Shelf for the purposes of exploring for ... [or] developing ... the natural resources ... of the subsoil and seabed of the outer Continental Shelf." *Becker v. Tidewater Inc.*, 586 F.3d 358, 366 (5th Cir. 2009) (quoting *Mills v. Director*, 877 F.2d 356, 357-58 (5th Cir. 1989) (en banc)). The Fifth Circuit has held that "LHWCA coverage as extended under § 1333(b) applies to employees who (1) suffer injury or death on an OCS platform or the waters above the OCS; and (2) satisfy the "but for" status test this court described in *Herb's Welding, Inc. v. Gray*, 766 F.2d 898, 900 (5th Cir. 1985)." *Mills*, 877 F.2d at 362.

Here Plaintiff meets the above test and is therefore covered under the LHWCA. Plaintiff was clearly injured on a OCS platform and he would not have been injured "but for" the extractive

7

operations on the shelf. The LHWCA provides the exclusive remedies for an employee's claims against his or her employer. *Demette*, 280 F.3d at 502; *see also Moore v. Phillips Petroleum Co.*, 912 F.2d 789, 791 (5th Cir. 1990). Plaintiff has asserted no LHWCA claim against his employer, Defendant Charles Holston, therefore Plaintiff has no viable claims against his employer and Defendant Charles Holston is entitled to summary judgment. Moreover, while a person covered by the LHWCA may recover for a personal injured caused by the negligence of a vessel, as previously discussed, the Nansen Spar is not a vessel and therefore this provision does not apply to Plaintiff's claims. 33 U.S.C. § 905(b).

As a result, the only claims Plaintiff may assert against the remaining Defendant, Kerr McGee, are Texas state law claims.

*D. Texas State Law*

Under Texas law a premises owner does not generally have a duty to ensure that an independent contractor safely performs his or her work. *Koch Refining Co. v. Chapa,* 11 S.W.3d 153, 155 (Tex. 1999). However, a premises owner may incur such a duty if it either contractually retains or actually exercises control over the independent contractor's work. *Id.* "It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations...." *Id.*

It is undisputed that Kerr McGee did not contractually retain control of its subcontractor, Charles Holston. However, Plaintiff does maintain that Kerr McGee did actually exercise control over Charles Holston's work. (Rec. Doc. 131 at 9-11). Specifically, Plaintiff argues that Kerr McGee: 1) was aware that workers were placed on beams to carry out their work, 2) knew that the beams were slippery, 3) had the right to stop the job and change the way it was done, 4) controlled

8

everything on the rig, including scaffolding, 5) issues work permits and required that a job safety checklist be prepared daily, and 6) controlled the time and manner that crew changes occurred. (Rec. Doc. 131 at 9-10). The only evidence Plaintiff cites in support of these allegations is the deposition of Ronald Bailey.

The Court notes that Plaintiff's argument is nearly identical to the argument advanced by the plaintiff in *Koch Refining*. In that case the plaintiff contended that defendant maintained sufficient control over its subcontractor by "the mere presence of the [defendant's] safety employee and the possibility that he might intervene and forbid [the plaintiff] from lifting the pipe in a dangerous manner." *Id.* The Texas Supreme Court held that this degree of control was insufficient to create a duty, as it failed to establish that the subcontractor was "not free to do the work in their own way and is not evidence that [defendant] controlled the method of work or its operative details. Every premises owner must have some latitude to tell its independent contractors what to do, in general terms, and may do so without becoming subject to liability." *Id.*

Ronald Bailey's deposition does not establish any evidence beyond that presented to the court in *Koch Refining*. Just as in that case, Kerr McGee supervised the work performed by its subcontractor and was able to stop work if it was being performed in a dangerous manner. In fact Mr. Bailey's deposition suggests that Charles Holston was free to perform its work in its own way. When asked if anyone from Kerr McGee showed the Charles Holston crew where to work and the type of work to be done, Mr. Bailey replied "[n]o sir. He showed us the platform, the emergency devices, the emergency equipment....but he didn't have nothing to do with where we were going to be working." (Rec. Doc. 131-6 at 12). When pressed about whether anyone showed them where to work, Mr. Bailey could not recall who told him where to work. *Id.* While Mr. Bailey did meet frequently with Kerr McGee personnel, those meeting were just to inform Kerr McGee of what the Charles Holston crew was doing and to "get[] on the same page with them." *Id.* Furthermore,

9

Charles Holston provided all of the crew's required equipment and the crew conducted their own daily safety meeting. *Id.* at 13. Finally, while Kerr McGee did have stop-work authority, it never actually exercised that authority with reference to Charles Holston's job performance. *Id.* Therefore this Court finds that Kerr McGee did not actually exercise control over Charles Holston and is therefore not liable for Plaintiff's claims under Texas law.

### III. CONCLUSION

Accordingly,

IT IS ORDERED that Defendants' motions for summary judgment are GRANTED. (Rec. Docs 113 & 125).

New Orleans, Louisiana this 28th day of June, 2011.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE